
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-16-19

|  |  |
|---|---|
| LAWRENCE HUBBARD<br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 15, 2017<br><br>APPEAL FROM THE MILLER<br>COUNTY CIRCUIT COURT<br>[NO. 46CR-14-340-2]<br><br>HONORABLE JOHN W. LANGSTON,<br>SPECIAL JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Lawrence Hubbard appeals the amended sentencing order entered by the Miller County Circuit Court on October 14, 2015, finding him guilty of residential burglary and theft of property and sentencing him to thirty years' and twenty years' imprisonment, respectively, to be served consecutively. On appeal, he challenges the sufficiency of the evidence supporting the convictions, and he argues that the circuit court abused its discretion in admitting evidence pursuant to Arkansas Rule of Evidence 404(b). We affirm.

Just before 8:00 a.m. on March 21, 2014, Debra Johnson left her home on Jack Cullen Drive, in Texarkana, Arkansas. Her husband had already left for work. About twenty minutes later, Debra received a call from her husband advising that their home alarm was going off. Debra returned home to find that the police had responded to the alarm. She also found that the glass door in the back of her home had been broken and glass was all over the ground, her

jewelry was lying on the ground, her home had been ransacked, and her three-foot-tall jewelry chest had been stolen along with more than $25,000 in jewelry and two guns.

Later that same morning, homes located at 6 Ridge Row Circle, 7311 Schilling Circle, and 6602 North Park Road in Texarkana, Texas, were burglarized. The owner of the home at 6602 North Park Road, was at home around 10:45 a.m. when she saw and heard men enter. As they ransacked her home, she hid in the bathroom and called the police. When the police arrived, three suspects fled. Police apprehended Hubbard. Two other suspects escaped. Not long thereafter, the police received a call about a burglary in progress at 7004 North Park Road. Willie Powell and Marcus Levine were arrested after fleeing that location.

Three days after Hubbard's arrest, the police interviewed him at his request. He stated that he was from Houston, Texas, and had traveled to Texarkana in his vehicle with Powell and Levine. He said that they met with Stephanie Parker, whom he had dated in 2012 and who was currently living in Texarkana. Hubbard stated that they devised a plan whereby Parker would drive the three men around Texarkana, and they would burglarize homes. Hubbard confessed to three of the March 21, 2014 Texas burglaries—6 Ridge Row Circle, 7311 Schilling Circle, and 6602 North Park Road.[1] He said that they mostly took jewelry from the homes and that they carried the items out of the homes in pillowcases taken from the homes. Hubbard did not confess to the Arkansas burglary on Jack Cullen Drive.

---

[1]Hubbard later, on June 20, 2014, pled guilty in Texas to three counts of burglary of a habitation and was sentenced to serve fourteen years' imprisonment for each count, to run concurrently.

SLIP OPINION

Stephanie Parker was later arrested for her involvement in the burglaries. On July 10, 2015, she pled guilty to the charges stemming from the burglary on Jack Cullen Drive.[2] She testified at Hubbard's trial that he wanted her to drive his vehicle around Texarkana and show him the "rich neighborhoods" so that he, Powell, and Levine could burglarize homes in those neighborhoods. She stated that she was to receive $500 for her part in the burglaries.

Parker said that on the morning of March 21, 2014, she drove the men to a home on Jack Cullen Drive. Parker knocked on the door of the home, and no one answered. She said that the three men jumped out of the car and went behind the home. Hubbard told her to drive around the block and wait for his call. When Hubbard called, she returned to the home, and the men placed pillowcases filled with the stolen items in the trunk and placed a three-foot-tall jewelry box in the backseat. She said that the men cleaned out the jewelry box, put the jewelry in the pillow cases, and threw the box out of the car. Parker drove the men to the next house. Parker testified that Hubbard, Powell, and Levine broke into four or five houses that morning. She said that she was driving around the 6602 North Park Road home (while Hubbard, Powell, and Levine were inside) and was on the phone with Hubbard when she saw the police. She warned Hubbard the police were nearby, and she drove away.

The State filed a third amended criminal information against Hubbard on October 5, 2015, alleging that on March 21, 2014, he had committed the offenses of residential burglary,

---

[2]Specifically, she pled guilty to residential burglary, theft of property, and possession of a firearm by certain persons. A term of Parker's plea was to provide truthful testimony at the trial of her codefendant.

theft of property, and two counts of possession of a firearm by certain persons.[3] After the trial, the jury found Hubbard guilty of residential burglary and theft of property.

Hubbard's first point on appeal is a challenge to the sufficiency of the evidence supporting the residential-burglary and theft-of-property convictions. Our standard of review for a sufficiency challenge is well settled. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Navarro v. State*, 371 Ark. 179, 186, 264 S.W.3d 530, 535 (2007) (citing *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006)). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Navarro*, 371 Ark. at 186, 264 S.W.3d at 535. We affirm a conviction if substantial evidence exists to support it. *Id.*, 264 S.W.3d at 535. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*, 264 S.W.3d at 535.

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* at 186–87, 264 S.W.3d at 535–36. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* at 187, 264 S.W.3d at 536. The credibility of witnesses is an issue for the jury and not the court. *Id.*, 264 S.W.3d at 536. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*, 264 S.W.3d at 536.

---

[3]The possession-of-a-firearm charges were later severed.

A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a) (Repl. 2013). In this case, the offense punishable by imprisonment was theft of property. A person commits theft of property if he or she knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1).

Hubbard's sufficiency challenge is limited to the argument that the State failed to present substantial evidence that his control over the Johnsons' property was unauthorized. More specifically, Hubbard argues that the State failed to introduce testimony that Hubbard, or his accomplices, did not have the authority to exercise control over the Johnsons' property. With no direct evidence that Hubbard did not have the authority to take the Johnsons' property, Hubbard contends that the State failed to prove an element of theft of property, and by extension, an element of residential burglary.

We hold that the State presented substantial evidence that Hubbard's control over the Johnsons' property was unauthorized. While Debra Johnson did not specifically state, "Hubbard did not have permission to take our possessions," her testimony made clear that Hubbard, or his accomplices, were not authorized to take or exercise control over her and her husband's property. Debra testified that her home was broken into, setting off the home alarm. She saw glass from the back door of her home "all over," her jewelry on the floor, her kitchen cabinets open, her bedroom drawers open, and their "junk thrown out everywhere." She said

that her closet had been "trashed" with "things all over the floor," and her big jewelry chest was gone. She stated that the study had been "ransacked." She said that she "felt violated because somebody had just taken it upon themselves to go through [my] stuff." She also stated that she was "devastated" because a number of the pieces of jewelry stolen were gifts from deceased family members and that the jewelry was all she had left of them. She stated that the value of the jewelry that was stolen was more than $25,000. She also said that it was "humiliating . . . for someone to break into [my] home, and to just come in and take [my] stuff." In addition to her jewelry, Debra testified that two guns were stolen from the home. Her husband testified that Debra was "extremely upset" that her jewelry had been taken.

Based on this evidence, it was reasonable for the jury to infer that Hubbard was exercising unauthorized control of the Johnsons' property. *Jarrett v. State*, 265 Ark. 662, 664, 580 S.W.2d 460, 461 (1979) (holding that the trial court could infer from the evidence that the defendant was exercising unauthorized control over the packaged meat when instead of taking the meat to the checkout counter, he took it into an employee storeroom and began putting it into sacks; "no other explanation for [the defendant's] conduct is readily apparent"). We therefore affirm the theft-of-property and residential-burglary convictions.

For his second point on appeal, Hubbard argues that the circuit court abused its discretion in admitting evidence, under Arkansas Rule of Evidence 404(b), of the facts and circumstances concerning the three Texas burglaries to which Hubbard admitted having committed in his statement to police and to which he later pled guilty.

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

6

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2016). Evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Vance v. State*, 2011 Ark. 243, at 20, 383 S.W.3d 325, 339 (citing *Osburn v. State*, 2009 Ark. 390, 326 S.W.3d 771, *cert. denied*, 559 U.S. 938 (2010)). Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Vance*, 2011 Ark. 243, at 20, 383 S.W.3d at 339. Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible under Rule 404(b). *Id.* at 20, 383 S.W.3d at 339.

While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime must be similar to the crime charged. *Id.* at 20, 383 S.W.3d at 339. This court gives considerable leeway to the circuit court in determining if the circumstances of the prior crimes and the crimes at hand are sufficiently similar to warrant admission under Rule 404(b). *Id.* at 20, 383 S.W.3d at 339. In reviewing the admission of evidence under Rule 404(b), appellate courts have observed that circuit courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Id.* at 20–21, 383 S.W.3d at 339.

Hubbard argues that the circuit court abused its discretion in allowing the Rule 404(b) evidence as independently relevant evidence of his identity. He argues that "at no point in time was identity at issue in this case" because the State's witness, Stephanie Parker, testified that

the home on Jack Cullen was one of the homes that she drove Hubbard, Powell, and Levine to and that it was one of the homes that they had burgled.

Contrary to Hubbard's argument, identity was an issue in this case. In his statement to officers in the days after his arrest, Hubbard denied being present during the burglary of the home on Jack Cullen Drive. He pled "not guilty" to the charges stemming from the burglary of the home on Jack Cullen Drive. While Parker testified that Hubbard was involved in the burglary of the home on Jack Cullen Drive, that is not conclusive evidence on the issue of his identify. Parker was Hubbard's accomplice, and her testimony must be corroborated. Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2015).

In the instant case, evidence of the three Texas burglaries (including Hubbard's admission that he burglarized the three Texas homes) is independently relevant because it corroborates Parker's testimony identifying him as a participant in the plan and its execution to drive around and burglarize homes in Texarkana, which included the Arkansas burglary of the home on Jack Cullen Drive. Therefore, the circuit court did not abuse its discretion in finding that the Rule 404(b) evidence was independently relevant.[4]

Further, the circumstances surrounding the Texas burglaries were very similar to those surrounding the Arkansas burglary. They were all part of the same, continuous criminal episode. All the burglaries occurred within a three-hour time frame on the morning of March 21, 2014. All of the homes burgled were in relative close proximity. Each burglary involved

---

[4]Hubbard also argues that evidence of the Texas burglaries was not independently relevant on the issues of intent or "chain of evidence" and, therefore, was inadmissible under Rule 404(b). Based on our holding that the evidence was admissible under Rule 404(b) to prove identity, we need not address these arguments.

Parker driving Hubbard, Powell, and Levine in Hubbard's vehicle to a home in Texarkana; Parker getting out of the car and knocking on the front door of the home to see if anyone was there; Parker dropping off Hubbard, Powell, and Levine and then driving around the block awaiting Hubbard's call to return and pick up the men; Hubbard, Powell, and Levine entering the back of the home by breaking the glass in the back door; the men ransacking the homes looking for valuables, in particular jewelry; the men carrying out the stolen items in pillowcases taken from the victim's home; and Parker picking the men up and driving them to the next home to repeat the crime.

In sum, the Rule 404(b) evidence—the facts and circumstances surrounding the three Texas burglaries—was independently relevant to the Arkansas crimes for which Hubbard was charged and was very similar to the facts and circumstances surrounding the Arkansas crimes. Accordingly, we hold that the circuit court did not abuse its discretion in admitting the Rule 404(b) evidence and affirm on this point.[5]

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Morledge Law Firm*, by: *George "Birc" Morledge IV*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.

---

[5]Hubbard also argues that the Rule 404(b) evidence should have been excluded under Arkansas Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice. This argument is not preserved for appeal because Hubbard failed to obtain a ruling on it from the circuit court. It is incumbent on a defendant to get a ruling from the circuit court on issues he or she seeks to appeal. *Cluck*, 365 Ark. at 175, 226 S.W.3d at 787.