

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-16-1032

CHRISTOPHER L. OWENS, JR.

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered: May 31, 2017

APPEAL FROM THE GRANT COUNTY CIRCUIT COURT
[NO. 27CR-16-6]

HONORABLE EDDY R. EASLEY, JUDGE

AFFIRMED

**BART F. VIRDEN, Judge**

A Grant County jury convicted appellant Christopher Owens, Jr., of residential burglary and theft of property and sentenced him as a habitual offender to serve an aggregate term of fifty years in prison. Owens argues that the trial court erred in denying his directed-verdict motions because there was insufficient evidence to support his convictions. We affirm.

## I. *Jury-Trial Testimony*

Jake Dodridge testified that on December 31, 2015, around 11:00 a.m., he arrived at his parents' house in Traskwood to help move a dryer. He stated that he had known his parents' neighbor, Curtis Rushing, who lived directly across the way from his parents, for approximately fifteen years. Dodridge stated that Rushing's vehicles were gone and that no one appeared to be home. Dodridge testified that "[w]hen you're in a small area, you know what people drive and you know what is normal and what ain't." Dodridge stated that he

saw an unfamiliar car, which he described as "dirty white" with no hubcaps, parked halfway up Rushing's driveway. Dodridge then observed a man walking from Rushing's carport to the car in the driveway. Dodridge said that the man had "a look of shock" when he looked up and saw Dodridge watching him. Dodridge said that approximately thirty minutes later he saw that the same car and the same man had been stopped by a police officer in Haskell. Dodridge stopped and told the officer what he had seen at the neighbor's house.

Officer Russ Hansley with the Haskell Police Department testified that on December 31, 2015, around 11:30 a.m., he stopped a white car with expired tags. He noticed a very large television and electronic equipment in the backseat of the car and became suspicious because an extension cord and drywall were still attached to the equipment. Hansley identified Owens as the driver of the car. He placed Owens under arrest and took inventory of the car. During the inventory, Hansley found a bag of prescription-pill bottles with the name "Curtis Rushing" on them. Hansley contacted Rushing, who came to the scene and identified other items belonging to him.

Curtis Rushing testified that he had left his residence around 7:45 a.m. on December 31, 2015, to go hunting. He was sitting in his deer stand when he received a call from Hansley. Rushing stated that, when he arrived at the scene where Owens had been stopped, he saw his television, a DIRECTV box, the back from his entertainment center, a box containing ammunition, a Wii station, and his medicine bag. Rushing stated that he did not know Owens and had not given Owens or anyone else permission to take the items from his home. He said that he had not left his door open and that the door facing had not been broken when he left that morning.

Investigator Jason Teague with the Grant County Sheriff's Office testified that he arrived at the traffic stop to assist Hansley. He said that he accompanied Rushing back to his residence and that they discovered a door that had been forced open. Teague said that Rushing took him through the house, pointing to areas from which the items found in Owens's car had been stolen. Teague said that he later took a statement from Owens, who claimed that he had found the items on the side of the road.

Owens's statement was introduced into evidence. According to Owens, he had been driving around trying to find a transmission shop when he passed a wooded area and saw a television in a ditch. Owens said, "I did not go in that man's house, I did not take none of his belongings. I did not do that."

Defense counsel moved for a directed verdict on both charges, but the trial court denied those motions. The jury found Owens guilty of residential burglary and theft of property. The State introduced Owens's previous convictions for theft (two counts) and residential burglary (four counts). The jury then sentenced Owens to thirty-five years and fifteen years, respectively, and recommended that the sentences be served consecutively.

## II. *Standard of Review*

On appeal, Owens argues that the trial court erred in denying his motions for directed verdict. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Hubbard v. State*, 2017 Ark. App. 93, 513 S.W.3d 289. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which

is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* On appeal, we do not weigh the evidence, nor do we weigh the credibility of witnesses. *Stigger v. State*, 2009 Ark. App. 596.

The law makes no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Benton v. State*, 2012 Ark. App. 71, 388 S.W.3d 488. Evidence of guilt is not less because it is circumstantial. *Baca v. State*, 2013 Ark. App. 524. The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes reasonable hypotheses consistent with innocence is for the jury to decide. *Id.*

III.  *Discussion*

A.  Residential Burglary

A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Supp. 2015).

Owens argues that there was no evidence whatsoever that he entered Rushing's residence for any purpose. Owens points out that the investigators did not take fingerprints or other evidence from the scene; they did not attempt to determine the location from which he had picked up the items later found in his car; and they did not attempt to obtain his cell-phone records to pinpoint his location at the time of the burglary. In his statement

to police, Owens denied entering the residence or even being on Rushing's property and stated that he had found the items in a ditch.

Despite any perceived weaknesses in the police's investigation, the testimony established that Rushing had left his home at 7:45 that morning, which created an opportunity to burglarize the residence. Testimony revealed that a door to Rushing's home had been forced open in Rushing's absence. Only approximately thirty minutes had elapsed between the time Owens was seen by Dodridge coming from Rushing's carport and the time he was found in possession of items that Rushing identified as having come from inside his residence. Possession of recently stolen property is prima facie evidence of guilt of burglary of the party in whose possession the property is found, unless it is satisfactorily accounted for to the jury. *Stout v. State*, 304 Ark. 610, 804 S.W.2d 686 (1991). The jury was not required to believe Owens's explanation that he had found the stolen property in a ditch. Viewing this evidence in the light most favorable to the State and considering only the evidence that supports the verdict, we hold that there was substantial evidence to support Owens's conviction for residential burglary.

## B.  Theft of Property

A person commits theft of property if he or she knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1). The element of criminal intent can seldom be proved by direct evidence and must be inferred from the facts and circumstances of the crime. *Hicks v. State*, 2012 Ark. App. 667. The fact-finder need not lay aside its common sense in evaluating the ordinary affairs of life and may consider and give

weight to any false, improbable, and contradictory statements made by a defendant to explain suspicious circumstances. *Id.*

Owens concedes that he was found in possession of the stolen items but argues that there was insufficient evidence to show that he "had a clue that his possession was unauthorized without resorting to speculation and conjecture." Owens argues that Dodridge did not see him take any items from Rushing's property and did not see him in possession of the stolen items prior to the traffic stop in Haskell.

It is well settled that guilt can be established without eyewitness testimony. *Baca*, *supra*. Rushing testified that he had not given anyone permission to take the stolen items from his residence. Dodridge saw Owens leaving Rushing's residence, and only thirty minutes later Owens was found in possession of recently stolen property taken from inside the residence. Again, the jury was not required to believe Owens's statement about how he had acquired the property. *See, e.g.*, *Brickey v. State*, 2015 Ark. App. 175 (recognizing that the unexplained or the unsatisfactory or the improbable explanation for possession of recently stolen property may be considered as evidence of guilt of theft of property). Considering all the facts and circumstances, the jury, without resorting to speculation or conjecture, could have reasonably concluded that Owens knowingly took or exercised unauthorized control over items belonging to Rushing. We hold that there was substantial evidence to support Owens's conviction for theft of property.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Philip C Wilson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.